b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL DOCKET NO. 1:21-CR-00192 |
| VERSUS | JUDGE HICKS |
| HENRY ANTHONY JACKSON, JR. A/K/A "MONSTER" A/K/A "BOOBIE" | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Defendant Henry Anthony Jackson, Jr. a/k/a/ "Monster" a/k/a "Boobie" ("Jackson") filed a Motion to Suppress evidence, alleging the affidavit supporting the search warrant contained falsehoods.  ECF No. 61.

Because Jackson lacks standing to move to suppress items seized in storage unit 82C, it is recommended that Jackson's Motion to Suppress (ECF No. 61) be DENIED.

I.  Background

Pursuant to a warrant supported by an affidavit, the Government searched unit 82C of Brown's Stor & Loc at 716 Bryan Street, Opelousas, Louisiana, pursuant to a warrant.  At the time it obtained the warrant, the Government believed unit 82C was leased by, or being used by, Jackson.

Based on the items found in unit 82C, Jackson is charged with: (1) possessing with intent to distribute 400 grams or more of a mixture and substance containing a

detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); (2) possessing with intent to distribute a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (3) possession of a firearm in the furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c); and (4) possession of a firearm by a person who has previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1); as well as a forfeiture notice for firearms, ammunition, and currency and property derived from the proceeds of the narcotics offenses. ECF No. 37.

Jackson filed a Motion to Suppress and for a *Franks* hearing,[1] contending the affidavit supporting the search warrant for unit 82C contained false statements made with a reckless disregard for the truth. ECF No. 61. Specifically, Jackson contends the affidavit contained: misrepresentations that Jackson had been observed to have entered unit 82C; misrepresentations that Jackson gave oral directions to unknown persons for drug transactions to be conducted at unit 82C; and presumptions and

---

[1] "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *see also United States v. Arispe*, 328 Fed. Appx. 905, 906–907 (5th Cir. 2009).

If, at the *Franks* hearing, "the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks,* 438 U.S. at 156.

false inferences that Jackson was the sole person utilizing unit 82C. Jackson contends that, when the false statements are disregarded, the remaining portion of the affidavit is inadequate to support a finding of probable cause to search. Therefore, all items seized pursuant to the illegal search of unit 82C should be suppressed.[2]

---

[2] It is noted that a return on the search warrant was never filed. The items seized from unit 82C were not mentioned at the *Franks* hearing. The only mention in the record of the items seized is in the affidavit supporting the complaint against Jackson that was filed to institute the prosecution against him. That complaint was superseded by an indictment (ECF No. 8) which was superseded by a second indictment. ECF No. 37.

There is conflicting case law as to whether a superseded Complaint (with its supporting affidavit) can be considered by the Court. For cases in which the Courts refused to consider the superseded criminal complaint, *see United States v. Henderson*, 2022 WL 464206, at *3 (M.D. Fla. 2022) ("Counsel is not ineffective for not asserting a meritless challenge to the criminal complaint that was superseded by the grand jury indictment."); *United States v. Hussaini*, 2022 WL 138474, at *6 n. 3 (S.D. Fla. 2022) (In denying a defendant's motion to dismiss an indictment and arguments to consider the affidavit and evidence supporting the Complaint, the Court stated "the better view is that we shouldn't consider the Complaint or the Affidavit because those documents have been superseded by the Indictment."); *United States v. Godwin-Painter*, 2015 WL 13735432, at *5 (S.D. Ga. 2015) (explaining that a criminal complaint cannot be considered when determining whether to dismiss a superseding indictment because doing so would "require[ ] the Court to erase the line between complaint and indictment"), *report and recommendation adopted,* 2015 WL 5838501 (S.D. Ga. 2015); *United States v. Clemens*, 2011 WL 1540150, at *1 n.1 (D. Mass. 2011) (considering arguments on a motion to dismiss an indictment "to the extent that they are relevant to the *indictment*, which superseded the *complaint*"), aff'd, 738 F.3d 1 (5th Cir. 2013). For cases in which the Court considered the superseded complaint because it was part of the record, *see United States v. McHugh*, 583 F. Supp. 3d 1, at *8 n. 2 (D.D.C. 2022) ("It is appropriate if not necessary to rely on other official documents for the specific factual allegations underlying the Superseding Indictment, as the indictment itself contains few, if any, details about McHugh's alleged conduct."); *United States v. Jones*, 383 F. Supp. 3d 810, 814 (N.D. Ill. 2019) (holding that "[a] court may also rely on the facts outlined in the criminal complaint and accompanying affidavit" when considering a motion to dismiss an indictment).

Because the parties did not mention or argue about what was said in the affidavit supporting the Complaint, it is not discussed herein.

The Government opposed Jackson's Motion for a *Frank's* hearing. ECF No. 70. At the time of briefing, the Government produced additional video and photographic evidence that had not previously been produced for the defense,[3] so the hearing was continued. After additional briefing (ECF Nos. 74, 76), the Court found that Jackson had satisfied his preliminary burden and granted his Motion for a *Franks* hearing. ECF No. 70.

An evidentiary hearing was then held on the Motion to Suppress. At the hearing, the officer who signed the affidavit in support of the search warrant, Officer Deshotel, testified. Video and photographic evidence was also introduced.

II. <u>Law and Analysis</u>

Jackson moves to suppress the drugs seized from unit 82C, alleging the affidavit supporting the warrant application contained false statements, without which there is no probable cause to search. *See Franks,* 438 U.S. at 155-56. Jackson contends that unit 82C is not his, nor are its contents, but he also contends he has standing to suppress the evidence seized in that unit. Jackson cannot have it both ways.

As the proponent of a motion to suppress, defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in

---

[3] That evidence was produced less than a month before trial. The trial has been continued. ECF No. 81.

4

violation of his Fourth Amendment rights.[4] *See United States v. Kelly*, 981 F.2d 1464, 1467 (5th Cir. 1993), *cert. den.*, 508 U.S. 944 (1993). Generally, "[t]he government may not use evidence obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures to prove a defendant's guilt at trial." *United States v. Breland*, 53 F.3d 100, 102 (5th Cir. 1995).

"The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure. To prevail, the complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy in the item or place at issue." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). To determine whether a Fourth Amendment right existed, a court must ask whether the defendant has a possessory interest in the items seized, and whether he had an expectation of privacy in the area searched. *See United States v. Salvucci*, 448 U.S. 83, 92 (1980).

Whether a defendant has standing to contest the validity of a search "depends on (1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." *United States v. Gomez*, 276 F.3d 694, 697 (5th Cir. 2001) (*citing United*

---

[4] The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., Amend. IV.

*States v. Kye Soo Lee,* 898 F.2d 1034, 1037-38 (5th Cir. 1990)). The defendant bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the place searched. *See Rawlings v. Kentucky,* , 104 (1980). Fourth Amendment rights are personal and may not be asserted vicariously. *See United States v. Maldonado*, 999 F.2d 1580, at *3 (5th Cir. 1993) (*citing Rakas v. Illinois,* 439 U.S. 128, 133-34 (1978)).

The "Fourth Amendment interest [is] a 'reasonable expectation of privacy,' defined by 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Barry v. Freshour,* 905 F.3d 912, 914-15 (5th Cir. 2018), *cert. den.*, 139 S. Ct. 2763 ( U.S. 2019) (*citing United States v. Jones*, 565 U.S. 400, 408 (2012)) (because Plaintiff did not own or operate the medical clinic where records were seized, did not assert a privacy interest in the area searched, and did not have a ownership or possessory interest in the records, he did not have a property interest or a reasonable expectation of privacy in the records and lacked Fourth Amendment standing to challenge the seizure). "[A] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *United States v. Vo*, 589 Fed. Appx. 720, 723 (5th Cir. 2014) (*citing Rakas,* 439 U.S. at 134); *see also United States v. Moody,* 564 F.3d 754, 762 (5th Cir. 2009), *cert. den.*, 556 U.S. 1277 and 558 U.S. 919 (2009).

"'[P]roperty concepts' are . . . fundamental 'in determining the presence or absence of the privacy interests protected by that Amendment.' . . . This is so for at least two reasons. First, as a matter of settled expectations from the law of property, individuals often have greater expectations of privacy in things and places that belong to them, not to others. And second, the Fourth Amendment's protections must remain tethered to the text of that Amendment, which, again, protects only a person's own 'persons, houses, papers, and effects.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2227 (2018) (citing *Rakas,* 439 U.S. at 143–144, n. 12). "Fourth Amendment rights are individually held and cannot be asserted solely by reference to a particular place;" rather, they may be enforced only by persons whose own protection under the Amendment has been violated. *United States v. Phillips*, 382 F.3d 489, 495 (5th Cir. 2004). "The Fourth Amendment protects people, not places." *Phillips*, 382 F.3d at 495 (*quoting Katz v. United States,* 389 U.S. 347, 351 (1967)).

To determine whether a defendant had a reasonable expectation of privacy in a place or thing, the factors to be weighed include: (1) whether the defendant has a possessory interest in the thing seized or the place searched; (2) whether he has the right to exclude others from that place; (3) whether he has exhibited a subjective expectation that it would remain free from governmental invasion; (4) whether he took normal precautions to maintain his privacy; and (5) whether he was legitimately on the premises. *See Gomez*, 276 F.3d at 697–98 (*citing United States v. Haydel,* 649 F.2d 1152, 1155 (5th Cir. 1981), *cert. den.*, 455 U.S. 1022 (1982)); *see also United*

7

*States v. Setser*, 568 F.3d 482, 490–91 (5th Cir. 2009), *cert. den.*, 558 U.S. 963 (2009); *United States v. Torres*, 346 Fed. Appx. 983, 988 (5th Cir. 2009), *cert. den.*, 559 U.S. 1022 (2010). No one circumstance has a decisive, or "talismanic," significance. *See Gomez*, 276 F.3d at 698. However, without a possessory interest in a property, a defendant can neither exclude others from it nor take precautions to maintain the privacy of the property. *See Setser*, 568 F.3d at 491; *see also U.S. v. Ibarra,* 948 F.2d 903, 906 (5th Cir. 1991), *on rehearing on other grounds,* 965 F.2d 1354 (5th Cir. 1992) (Defendants, who did not own, lease, or live in a searched house, did not show they maintained any control over the premises or have a subjective expectation of privacy in the home or its contents, and did not have standing to contest the search). "'One of the main rights attaching to property is the right to exclude others,' and, in the main, 'one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude.'" *Byrd v. United States*, 138 S. Ct. 1518, 1527 (U.S. 2018) (*quoting Rakas,* 439 U.S. at 144, n. 12); *see also Barry,* 905 F.3d at 914; *United States v. Gaulden,* 587 F. Supp. 3d 375 (M.D. La. 2022), *appeal filed*, No. 22-30435 (5th Cir. 2022).

"People generally have a reasonable expectation of privacy in a storage unit, because storage units are secure areas that command a high degree of privacy." *United States v. Johnson*, 584 F.3d 995, 1001 (10th Cir. 2009). "[A]n individual can have a recognized privacy expectation in a storage space even when he or she is not the lessee of the unit." *United States v. Salinas–Cano,* 959 F.2d 861, 864 (10th

8

Cir.1992). A 'formalized arrangement among defendants indicating joint control and supervision of the place is sufficient to support a legitimate expectation of privacy.'" *United States v. Johns,* 851 F.2d. 1131, 1136 (9th Cir. 1988). The right to access the area searched is an important factor in the analysis. *See United States v. Lnu*, 544 F.3d 361, 366 (1st Cir. 2008), *cert. den.*, 555 U.S. 1198 (2009) (*citing Rawlings,* 448 U.S. at 105)).

    The record does not indicate that Jackson had a protected possessory interest in unit 82C or its contents. Jackson states in his brief that he did not lease the searched unit–unit 82C–and contends unit 82C is leased to an unknown person. Jackson further states that he leases unit 84C, which was 2 units down from unit 82C. At the evidentiary hearing, Officer Deshotel testified that, a few days before the hearing (and after the search took place), the Government determined who the lessor of unit 82C was, and that it was not Jackson. According to Jackson and Officer Deshotel, Jackson was not present in unit 82C when the search occurred. Jackson has steadfastly maintained that he only ever visited his own storage unit, unit 84C, and he has not claimed ownership of the contents of unit 82C. *Compare United States v. Terry*, 258 Fed. Appx. 304, 305 (11th Cir. 2007) ("We find no error in the district court's conclusion that Terry failed to meet his burden of demonstrating that he had a reasonable expectation of a right to privacy in storage unit C–4, the storage unit that was searched, as that unit did not belong to him."). Thus, Jackson did not have the right to exclude others, including the Government, from entering unit 82C.

Moreover, there was no testimony or other evidence to show that any items found in unit 82C belonged to Jackson. *Contrast United States v. Chaves,* 169 F.3d 687, 690–91 (11th Cir. 1999), *cert. den.,* 528 U.S. 1022, 1048 (1999) (defendant had standing to challenge search of warehouse he did not rent, where defendant possessed the only key to the warehouse and stored personal and business papers there); *United States v. Johns,* 851 F.2d 1131, 1135–36 (9th Cir.1988), *cert. den.,* 505 U.S. 1226 (1992) (owner of objects in storage unit on which he paid part of rent had a reasonable expectation of privacy in the unit, even though his name did not appear on the lease).

The Government's witness at the hearing admitted that Jackson's name is not on the lease for unit 82C. There is no evidence that Jackson was sub-leasing the unit or using another name for the lease.[5] Even if Jackson had informally arranged to share the unit with the lessee or was illicitly using the unit without the lessee's knowledge or consent, the actual lessee would have had the right to enter the unit and to give his consent to others entering the unit. Under such circumstances, Jackson could not have had a reasonable expectation of privacy in unit 82C.

---

[5] It has been held that a defendant has no reasonable expectation of privacy in a storage unit that he rented using another person's stolen identity. *See Johnson,* 584 F.3d at 1002.

Even if Jackson had informally arranged to share the unit with the lessee or was illicitly using the unit without the lessee's knowledge or consent, the actual lessee would have had the right to enter the unit and to give his consent to others entering the unit. Under such circumstances, Jackson could not have had a reasonable expectation of privacy in unit 82C.

The Government argues that Jackson was selling drugs out of unit 82C, but has not presented any *evidence* to prove that he was doing so, or that the drugs found in unit 82C belonged to him.[6]

The government also argues that its videos from a pole cam and a helicopter show Jackson going in and out of unit 82C, and show his black truck parked next to unit 82C. However, the video evidence does not show Jackson (or anyone else) entering or exiting unit 82C. This evidence holds interesting significance on both sides of the case. The Government maintains that Jackson did, in fact, have physical access to and control over unit 82C. For the limited purpose of this Motion, the Court could accept that argument to an extent. But that still places Jackson in the position – from a privacy perspective – of using the evidence both as a shield and a sword. That he cannot do. The evidence may hold inferential significance or other weight, when considered as part of a more complete record made on the merits. But on the present suppression record, it does not adequately support the position that Jackson had a protected privacy interest in unit 82C.

And because Jackson has denied having a possessory or ownership interest in either unit 82C or its contents, he has not demonstrated a reasonable expectation of

---

[6] As explained above the only evidence that there were drugs in unit 82C is in the Affidavit attached to the Complaint. ECF No. 1. There was no testimony at the hearing as to the items found in unit 82C, there is no return on the executed search warrant in the record, and the contents of unit 82C are not listed elsewhere in the record.

11

privacy in unit 82C. Therefore, Jackson does not have standing to assert a Fourth Amendment violation warranting suppression of any items seized from unit 82C.

Accordingly, Jackson's Motion to Suppress (ECF No. 61) should be DENIED.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Jackson's Motion to Suppress (ECF No. 61) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this $\underline{\text{21st}}$ day of March 2023.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge